TRAVELERS' INSURANCE CO. v. MURRAY.

1. PRESUMPTIONS CONCERNING UNDECIDED OBJECTIONS TO EVIDENCE.— In a trial to the court wherein the testimony of one witness was received subject to an objection to its competency " to be decided on

the final hearing," and the testimony of another witness "subject to the motion to strike out," and the record is silent as to any further action of counsel concerning the same, by objection, motion, exception or otherwise, and also silent as to any further ruling of the court in respect thereto, the presumption is that the court, of its own motion, disregarded all improper testimony, and based its finding and judgment on competent evidence only.

2. ACTION ON ACCIDENT INSURANCE POLICY — COMPETENT EVIDENCE.— In an action upon an accident insurance policy for the death of the insured from hernia, caused by an accident after the policy was issued, and while insured was in the line of his duty as a railroad fireman, one ground of defense being that he had been afflicted with chronic hernia for years before the accident, it was proper to prove by the railroad engineer and other testimony that the insured had been continuously at work prior to the accident, and to show thereby his habits, health, vigor and ability to perform continued hard labor up to the time of the injury.

3. EVIDENCE THAT PRIOR AILMENT WAS CAUSE OF DEATH.— The defense that the hernia which caused death existed previous to the accident is not established by proof of statements made by deceased to his physician after the accident; that he never before to his knowledge had a rupture, or any such trouble, but had noticed a little lump there at times for about eight years back, it further appearing by the testimony of deceased's mother, with whom he had always lived, and his brother, with whom he had during all those years associated and slept, both of whom had frequently seen his body exposed at the place of the alleged disease, that no such disease existed, and the weight of the medical testimony in the case being against the possibility of such affliction previous to the accident.

4. PROXIMATE CAUSE OF DEATH.— When a person who has been injured by an accident resulting in hernia dies after a dangerous and unsuccessful surgical operation, resulting in peritonitis, performed when death seemed inevitable without it, the accident and not the surgical operation is held to be the proximate cause of death.

5. EXCEPTIONS IN POLICY — CONSTRUCTION OF.— An accident policy which insures against death "from bodily injuries effected through external, violent and accidental means," but excepting death from hernia, or medical or surgical treatment, does not relieve the insurer from liability where the proximate cause of death was hernia caused by "external, violent and accidental means."

*Appeal from Lake County Court.*

ON the 17th of August, 1886, appellant issued and delivered to M. J. McDonald, at Leadville, a policy of insurance,

called an "accident policy," on his life, for $1,500, payable, in case of his death, to his mother, Margaret Murray (appellee). McDonald, at the time of securing such policy, and for a long time previous thereto, and for some time subsequently, up to the time of the injury resulting in death, was employed as fireman on an engine of the Denver & Rio Grande Railway. On the 28th day of January, 1887, McDonald, while in the discharge of his duties upon the engine, received an injury, supposed to be from slipping and falling, striking his bowels upon some part of the machinery, causing rupture and inguinal hernia. An attempt to reduce it, and keep the protruding portion of the bowels in place by ordinary and artificial methods, proving unsuccessful, and the hernia becoming strangulated, in order to save his life a surgical operation was performed, which failed to accomplish that result, and on the 14th of February following he died. The appellant refused to pay the sum insured, and the mother, beneficiary under the policy, brought suit.

The policy of insurance is copied entire in the complaint, the only portion of which necessary to a discussion and proper understanding of the case is as follows:

"This insurance does not cover disappearance; nor injuries of which there are no visible mark upon the body; nor accident nor death or disability resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or so afflicted: * * * Medical or surgical treatment; * * * disease or bodily infirmity; hernia, fits, vertigo, sleep-walking."

The written application of the deceased for insurance was put in evidence by appellant, in which occurs the following paragraph, which is all that is considered necessary to be copied:

"I have never had, nor am I subject to, fits, disorders of the brain, or any bodily or mental infirmity, except as herein stated."

The special defenses pleaded in the answer, and relied

upon by the appellant, after general traverses of the allegations in the complaint, were in substance — *First*, that by the terms of the contract of insurance it was agreed that the policy of insurance should not cover death resulting wholly or partly, directly or indirectly, from hernia, and that the death was the direct result of hernia; *second*, that it was agreed that the policy of insurance should not cover death resulting wholly or partly, directly or indirectly, from medical or surgical treatment, and that the cause of death was medical and surgical treatment, and no other cause; *third* (in the amended answer), that the application of deceased contained a warranty that he never had been, prior to such application, subject to any bodily infirmity, that the warranty was not true, and that deceased had hernia for a long time prior to making such application, and was at the time of the application subject to hernia,— to which replications were filed putting in issue the allegations of the answer. A jury having been waived, the cause was tried to the court, resulting in a judgment for appellee for $1,500 and costs.

Messrs. MARKHAM & DILLON, Mr. E. A. CLARK and Mr. HARRY CARR, for appellant.

Mr. J. L. MURPHY and Messrs. BROWNE & PUTNAM, for appellee.

REED, C. Nearly all the errors assigned are based upon the admission and rejection of evidence; the first six being directed to the supposed error of the court in allowing Dr. Heron, the attending physician, and Patrick Harvey, the locomotive engineer under whom the deceased was employed, to testify to the statements made by the deceased immediately after the injury was received, in regard to the manner and character of the accident by which the injury was received. It appears from the evidence that no one saw the accident, or knew of its occurrence or the injury, until nearly half an hour after its occurrence; and that de-

ceased was not conscious of having received serious injury, and continued to perform his duties for about that length of time, when the engineer observed the changed appearance and apparent suffering of his fireman, and made inquiries in regard to its cause. The statements made to the engineer and testified to by him, and those made to the physician and testified to by him, being all the evidence in regard to the character of the accident, and the manner in which it occurred, it is insisted were hearsay, and incompetent, and erroneously admitted. It appears from the record that objections were made to the admission of such testimony by appellant's counsel, on the grounds above stated, and the court admitted the physician's testimony "subject to the objection to be decided upon the final hearing," and afterwards admitted the engineer's testimony "subject to the motion to strike out." The record does not show that any further objection or motion was made, or that the ruling of the court was afterwards or otherwise expressed, and no exception appears to have been taken at any time. The exception at the close of the trial was in these words: "To which ruling of the court in finding the issues in favor of said plaintiff, and against said defendant, and in rendering judgment upon said finding in favor of the plaintiff and against the defendant, the said defendant, by his counsel, then and there excepted." This cannot, in any sense, be construed as an exception to the admission of the testimony of the physician, the engineer or any other witness. Hence, under the well-established rule of this court, we are relieved from the necessity of passing upon the admissibility of the testimony. The cause having been voluntarily submitted by both parties to a trial by the court without a jury, the testimony having been received by the court subject to a decision as to the competency thereof upon final hearing and upon a motion to strike out, and no further challenge to the testimony having been interposed, and no exception whatever having been reserved, we cannot properly sustain the assignments of error based upon the admission of said

testimony.   We may reasonably presume that counsel supposed at the trial, as we do now, that the court of its own motion disregarded all improper testimony, and based its finding and judgment upon competent evidence only.   *Rollins v. Board*, 15 Colo. 103.

The questions to be determined upon the trial were — *First*. Did the deceased, while following his avocation and performing his duties, receive an injury which caused his death?   *Second*. Was such injury one against which he was insured by the appellant?   *Third*. Was the policy of insurance void by having been obtained through fraudulent misrepresentations of the insured?

The proof of an injury having been received by the deceased was not dependent upon his declarations to the engineer or to his physician.   If it had been, the admission of the testimony would probably have been more strenuously resisted at the trial.   That there had been serious injury was obvious; its physical effects were patent and apparent. A brother of the deceased testified to seeing a bruise and discoloration upon the bowels of the deceased shortly after the alleged accident.   The fact of the injury was at once established by the examination of the physician, and his testimony in regard to it, and supported by that of all the physicians who made an examination.   The fact of the injury having been received by the deceased while attending to his duties was established by the evidence of Harvey, the engineer.   These being the facts necessary to be proved, and they not having been dependent upon the statements of the deceased, the peculiar attendant circumstances of the accident that caused the injury were incidental and secondary.

The seventh assignment of error is to the effect that the court allowed the witness Harvey to testify that the deceased had been continually at work for a long time previous to the injury, etc.   We do not think this was error. The defense relied upon and sought to be established was that the deceased had for years been afflicted with chronic

hernia, and any and all proper testimony to show his habits, health, vigor and ability to perform continued hard labor up to the time of the injury, was competent as refuting that supposition. *McCarthy v. Insurance Co.*, 8 Biss. 362.

The other objections urged in regard to the admission of testimony appear to be far more technical than substantial. The special defense that the policy of insurance was fraudulently obtained by misrepresentations of his physical condition in the application for insurance, and that the deceased had been suffering from or subject to a hernia for several years previous is not sustained by the evidence. It is based entirely upon the statements of the deceased to the physician after he received the injury. Dr. Heron's testimony was: "The first day he was injured he told me he never knew he had a rupture. * * * He told me he never knew he was ruptured or had any trouble or had any hernia or a rupture there at all. He said he noticed a little lump there and I quizzed him. I asked him how far back he remembered it, and he said there was a lump there at times; he did not know, but about eight years back." This was substantially all upon which to base the defense, and, taken as a whole, is no admission whatever of the existence of hernia. He says he never knew he was ruptured or had any trouble. This is almost conclusive evidence that no such trouble had existed, and that he had no definite idea of what a hernia was. It seems physically impossible that it could have existed that length of time, and he have no trouble or knowledge of it. A large number of physicians were examined as experts, and the weight of the evidence was clearly against the possibility of his having been afflicted with hernia previous to the injury. The mother, with whom he had always resided, and with whom he resided at the time of his death, testified to having seen frequently his person exposed at the point of the supposed hernia, and that none existed, and if, as supposed, a hernia was developed at an early age, she must have during all these years learned of its existence. The brother,

who had during all the years associated and slept with him, who had frequently seen his person exposed, said: "If there had been anything there, I would have seen it." That he saw nothing, and his brother never complained. Several witnesses who knew him intimately, and had for a long period, testified to his continued good health, bodily vigor, and a condition absolutely incompatible with the supposed disability. In order to make the supposed defense available, the previous existence of the hernia must have been established affirmatively by competent testimony, like any other material fact. It could not be established by supposition or presumption. "Neither party is bound to prove negatives. Upon each rests the burden of proving the affirmative matter which he alleges, and upon which issue is taken." *McCarthy v. Insurance Co., supra.* The statements to his physician in regard to the "lump" could under no circumstances be regarded as an admission for the purposes of this suit. The subject of the policy of insurance was not under consideration, probably not thought of, by either party to the conversation. There is no testimony that during treatment, including the incision at the surgical operation, any evidence was found of the existence of a case of chronic hernia. If, as supposed by counsel of appellant, the admission by the court of the statements of the deceased in regard to the manner in which the injury was received was error, the statements of deceased to his physician in regard to the former existence of a lump, being of the same character, was a very weak basis upon which to build a defense to defeat the action. It is apparent that the trial court found as a fact that deceased had not been afflicted with hernia previous to the injury, and that the injury received was the proximate and sole cause of death. By "proximate cause" is meant that cause which directly precedes and produces the effect, as distinguished from a remote cause. "Whether a cause is proximate or remote does not depend alone upon the closeness in the way of time in which certain things occur." *Cunningham v. Ly-*

*ness*, 22 Wis. 245. "An efficient, adequate cause, being found, must be deemed the true cause, unless some other cause not incidental to it, but independent of it, is shown to have intervened between it and the result." *Kellogg v. Railroad Co.*, 26 Wis. 223; *McCarthy v. Insurance Co., supra; Insurance Co. v. Crandal*, 120 U. S. 527; *Mallory v. Insurance Co.*, 47 N. Y. 52. After a careful examination of the evidence, we think it was ample to sustain the finding.

There is no evidence whatever to establish the defense that the insured "died of medical and surgical treatment, and no other cause." All the physicians who saw the case seem to have conceded that death was inevitable without a surgical operation. No charge of unskilfulness in performing the operation is made or suggested. That life was prolonged for quite a period by the operation is shown by the evidence. That the insured died from peritonitis resulting from the surgical operation is unimportant, when the fact is established that death was inevitable without the operation, and that, after a consultation of skilled physicians, the operation was resolved upon — necessarily dangerous — as the only possible means of preserving life.

It is ably urged in argument that deceased died of hernia, a cause of death excepted by the policy. Although appellant in its third special defense, which is verified, averred "that the cause of said death was medical and surgical treatment, and no other cause," which seems to be greatly at variance with the theory of the argument, counsel, perhaps, was not precluded by it. We cannot adopt the construction of the exception in the contract of insurance so ably urged. The hernia must be regarded as the result of the accident that caused the death; the cause of death; the force of the blow received; the consequent injury arising from the concussion, and the hernia as resulting. Deceased was insured against the accident by the terms of the body of the policy. Had he died of ordinary hernia, not produced by a serious and violent injury, appellant would probably have been released from payment; but when the

hernia is the accidental result of the force of the blow, it cannot be regarded as excepted. In this view, both the contract of insurance and the exception can be allowed to stand without doing violence to either — a rule always adopted when practicable. If not so construed, the exception must yield in this instance. It is "the fundamental rule of interpretation that policies of insurance are to be construed most strongly against the insurers who frame them." *Insurance Co. v. Crandal, supra; Burkhard v. Insurance Co.,* 102 Pa. St. 262.

It is now well recognized as a general rule, that, where an exception to a policy of insurance is capable of two meanings, the one is to be adopted which is most favorable to the insured. *Insurance Co. v. Horner,* 14 Colo. 391; May, Ins., §§ 172–179; Wood, Ins., §§ 141–146; *Allen v. Insurance Co.,* 85 N. Y. 473; *Insurance Co. v. Cropper,* 32 Pa. St. 351.

The business of the company is to insure against accident. The object of the insured in making the contract was to secure compensation and support in case of injury or disability arising from accident, and, in case of accidental death, to furnish a fund for the benefit of the mother. The contract in the policy for and on which he paid the consideration was to pay the mother $1,500, "if death shall result * * * from bodily injuries effected during the term of this insurance through external, violent and accidental means." That the contingency against which he insured did happen, and death ensued, is uncontradicted; that the bodily injuries resulting in death were received "through external, violent and accidental means" was established beyond controversy. Such construction must be given to contracts of this kind as was evidently contemplated by the parties, and, while so construing them as to protect the insurer against fraud, deception and misrepresentation, give the insured the benefit of his contract and consideration for the premium paid. Where, as in this case, there was no evidence of fraud or intentional impo-

sition, the defense must fail. We advise that the judgment be affirmed.

RICHMOND, C., concurs. BISSELL, C., dissents.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*