ASA G. DAILEY v. THE PREFERRED MASONIC MUTUAL ACCIDENT ASSOCIATION OF AMERICA.

*Accident insurance—Conditions of policy—Waiver—Right of action.*

| 102 | 289 |
|-----|-----|
| 117 | 476 |
| 102 | 289 |
| s57NW | 184 |
| 132 | ²700 |
| 102 | 289 |
| f139 | ³356 |

1. Where the secretary of a mutual accident insurance company, after being informed by a solicitor that a prospective applicant is carrying other insurance which, with that he proposes to take out, will exceed the limit prescribed by the company, and that he has agreed with the solicitor to drop such prior insurance at its expiration, sends the solicitor to take the application, and he, in answer to a question in the application whether the applicant is carrying other insurance, writes in a negative answer, the knowledge of the secretary and the solicitor is that of the company, and it will be held to have waived the right to insist upon a forfeiture of the policy on account of the prior insurance.[1]

2. Where, in such a case, the secretary indorses an acceptance upon the application, and fills out the policy with intent to have it take immediate effect, and causes it to be mailed to the appli-

[1] For note on effect of agent's knowledge of falsity of statements in application for insurance, see *Clemans v. Supreme Assembly,* 16 L. R. A. 33.

102 MICH.—19.

cant as of force and effect at that time, the company cannot be heard to say that there was no delivery, though the policy did not reach its destination until after the death of the applicant.

3. Where an insurance policy expressly refers to the application, and makes it a part of the contract of insurance, the two instruments must be construed together, in determining what the real contract is; and if the policy, as delivered, contains provisions not in the application, and which are not accepted by the applicant, they may be treated as waived by the company, and as constituting no part of the insurance contract.

4. A railroad conductor, in his application for accident insurance, stated that his sole business was running passenger trains. The application was accepted by the company, and a certificate issued, containing a condition that attempting to enter or leave moving conveyances using steam, electricity, water, or compressed air as a motive power were hazards not contemplated or covered by the insurance, and that no sum would be paid for injuries or death in consequence of such exposure, or while the insured was thus exposed. The certificate expressly referred to the application, which contained no such restriction as to entering or leaving trains when in motion, and made it a part of the contract of insurance. The insured was killed while attempting to alight from a moving train, and before the certificate had reached him in due course of mail. And it is held that it is common knowledge that conductors of passenger trains on all railroads must not only enter their trains when in motion, but leave them before they come to a full stop; that this may be a dangerous practice, but it is among the risks which the passenger conductor assumes when he enters such employment; and that this knowledge is so general that the company, when it took and approved the application, must have had knowledge of it, and, in view of this, it cannot insist upon said restriction.

Error to Wayne. (Brevoort, J.) Argued October 27, 1893. Decided January 5, 1894.

*Assumpsit.* Defendant brings error. Reversed.[1] The facts are stated in the opinion.

---

[1] The case was reargued, and judgment of circuit court affirmed. See opinion on page 299.

*Frank T. Lodge* (*Edwin F. Conely,* of counsel), for appellant.

*W. E. Baubie* (*Russel & Campbell,* of counsel), for plaintiff.

LONG, J.   This action is brought upon a benefit and indemnity certificate of $5,000; issued by the defendant upon the life of Arthur H. Dailey, a conductor on the Michigan Central Railroad, and a brother of the plaintiff, who was named as beneficiary therein. The maximum indemnity in case of injury was $25 per week. The cause was tried before a jury, resulting in a verdict and judgment for plaintiff for the amount of the policy and interest.

The record shows that the deceased made an application for the insurance in writing on January 16, 1891. It was filled out by Mr. McBride, a solicitor for the defendant, upon a blank form provided and furnished for that purpose.  In answer to the question contained in the application: "Have you other accident insurance covering weekly indemnity? If so, give names of companies, and amount of weekly indemnity in each,"—McBride filled in the answer, "No." And in answer to the question: "Does the weekly indemnity you now carry, and the amount you hereby apply for, exceed your weekly salary, wages, or income? If so, how much? Answer fully,"— McBride filled in the answer, "No." The testimony tends to show that, at the time of signing the application, Dailey explained to McBride that he had other insurance, which, with that proposed to be taken in the defendant company, would make the weekly indemnity exceed his wages; that McBride induced him to agree to drop this other insurance when it should expire, upon the 1st of March following, and assured him that the statements in the application would make no difference as to the validity

of the insurance he would give him; and that he agreed also to give Dailey credit for the premium until February 1. Mr. McBride testified that Mr. Miller, the secretary of the company, was advised of the fact that Dailey had other insurance, and that he did not desire to pay until the end of the month. January 19, Mr. Miller, as secretary, indorsed an acceptance upon the application. January 24 a policy was filled out, and properly executed by the president and secretary, under the seal of the company, and mailed to Dailey. The same date, about two or three hours after the policy was mailed to him, Dailey was run over by his train, and injured, so that he died the following day. He never saw the policy, which was delivered at his residence in the regular course of mail. The premium required by the company was afterwards tendered and refused.

Mr. McBride testified on the trial that he informed Miller, the secretary, of all of the facts, and that Miller agreed to charge him with the premium, and issue the policy at once. McBride says:

" I had told Miller that Dailey was going to let his other insurance run out, and he had promised to let me write him up as soon as his other insurance ran out. Miller said: ' You get it as soon as you can. We want it. He may not see you when it runs out, and get another year's insurance in some other company.' "

Mr. Miller does not deny that he was informed of the other insurance, and of Dailey's wish not to pay the premium at once. He says, however, that he did not agree to issue the policy and give credit for the premium. He did fill out the policy, however, and dated it back to the date of the application, January 16, but claims that he instructed his cashier not to deliver it until March 1, when the premium would be collected.

1. The defense claims that the policy was not operative

at the time of Dailey's death, for the reason that it had not been delivered; that it was sent to applicant's house by mistake; that the advance premium had not been paid; and that it was agreed that it should not become operative until March 1, 1891.

The court instructed the jury substantially that if the policy was filled out by the secretary with intent to have it take immediate effect, he knowing of the other insurance and of the agreement to give credit for the premium, and it was mailed to the deceased with intent to have it take immediate effect, the plaintiff could recover; but, on the other hand, if the secretary indorsed it to take effect on the 1st of March, when the other policy expired, and the secretary did not agree to extend credit for the premium, and the policy was mailed to the deceased by mistake of the cashier, and against the instructions of the secretary, the plaintiff would not be entitled to recover. The court further charged the jury that if they believed that the statements as to the other insurance, contained in the application, were made under the direction of McBride after he had been fully informed of the facts, and that the answers were written in by McBride after being so informed, the defendant would be bound by the acts of McBride, as he was the agent of the company.

We think there was testimony in the case to sustain these instructions. McBride says he knew of the other insurance, and the amount of it, and when it would expire. He testifies that he advised the secretary of it, and in fact solicited the insurance under the advice of the secretary. If so, then, notwithstanding the answers in the application were not truthfully made, the company could not avoid the policy. The knowledge of McBride and the secretary was the knowledge of the company, and the company must be held to have waived the right to insist upon the other insurance as a forfeiture. Under such

circumstances it is not in a position to assert that the answers are untrue. *Pudritzky v. Lodge,* 76 Mich. 428.

The court was not in error in the charge as to the extension of time to pay the premium, and the delivery of the policy, to take immediate effect. If the secretary, knowing all the facts, filled out the policy with intent to have it take immediate effect, and caused it to be mailed to the deceased as of force and effect at that time, the company cannot now be heard to say that there was no delivery, though it did not reach its destination until after the death of the insured. If these facts were true, the beneficiary could have enforced a delivery of the policy if delivery had been refused. The contract was complete when the application was accepted and credit given for the premium. May, Ins. § 46.

It is contended that the court was in error in directing the jury that Mr. McBride was the agent of the company, and that the company would be bound by his acts in writing in the answers to the questions in the application. We think the court was not in error in this part of the charge. Mr. McBride was given authority to take the application, and it appears that he was sent by the secretary for the very purpose of obtaining the application, the secretary knowing at that time that Dailey had other insurance.

2. Another question in the case relates to a certain condition in the policy. The policy recites:

"The conditions under which this certificate is issued, and to which the insured, by his acceptance hereof, agrees, are as follows: · * * * Standing or walking on the roadbed or bridge of any railway, or attempting to enter or leave moving conveyances using steam, electricity, water, or compressed air as a motive power, are hazards not contemplated or covered by this insurance, and no sum will be paid for injuries or death in consequence of such exposure, or while the insured is thus exposed."

The application upon which this policy was issued is set out in the record, and is entitled—

",Application for Membership in the Preferred Masonic Mutual Accident Association of America," and states:

" I hereby apply for membership in the above association, membership to be based upon the following statement of facts, which I hereby warrant to be true, and agree to accept certificate of membership subject to all its conditions and provisions." .

The blank form of application is numbered with questions and answers, from 1 to 20 inclusive.  No. 4 is as follows, in question and answer:

Q.  " Place of business."
A.  " M. C. Ry., Detroit, Mich."
No. 6.  " Occupation."
A.  " Passenger conductor M. C. Ry."
No. 7.  " What are the duties required of you in these occupations?  Answer fully."
A.  " Running passenger trains."
No. 8.  " Name and line of business of firm of which you are a member, or by whom you are employed."
A.  " M. C. Ry. Co."
No. 15.  " Have you in contemplation any special journey or hazardous undertaking, not stated in this application for indemnity?"
A.  " No."
No. 16.  " Are you aware that the benefits from this association will not extend to nor cover hernia, orchitis, nor to any bodily injury of which there shall be no external and visible mark, nor to any bodily injury happening directly or indirectly in consequence of disease, nor to death or disability caused wholly or in part by bodily infirmities or disease, or by the taking of poison in any form or manner, or by any surgical operation or medical or mechanical treatment, nor to any cause except when the accidental injury shall be caused by external and accidental violence, and that these shall be the proximate and sole cause of disability or death?"
A.  " Yes."
No. 17.  " Are your habits of life correct and temperate, and do you understand that the certificate of insurance will not cover any injury which may happen to you either

while under the influence of intoxicating drinks, or in con-sequence of having been under the influence thereof?"

*A.* "Yes."

No. 18. "Are you aware that any misstatement or con-cealment of facts by you, or the omission or neglect to pay within 30 days from date of notice the quarter-annual fee, or any of the assessments made by the association upon you, will work a forfeiture of all the claims you or your heirs or legal representatives may have to any benefits aris-ing from your connection with this association?"

*A.* "Yes."

"Applications for certificates are not binding until ac-cepted by the secretary. No other person is authorized to bind the association.

[Signed]     "A. H. DAILEY."

"Accepted January 19, 1891, 12 o'clock noon.

"A. C. M., Secretary.

"3-1-91."

Aside from the questions of other insurance, which have been before discussed, the foregoing contains substantially all there is in the application which Dailey signed.

It is contended that no recovery can be had under this policy, for the reason that the proofs show conclusively that Mr. Dailey came to his death while attempting to alight from his train when it was in motion, and that the direct cause of his injury and death, resulting therefrom, was in attempting to alight from his train while in motion. The declaration avers that,—

"At the time said injuries were incurred by said Arthur H. Dailey as aforesaid, he, said Arthur H. Dailey, was not attempting to enter or leave a moving conveyance, as de-fined by said policy."

It is contended by plaintiff:

1. That there was some evidence from which the jury might find that the deceased did not meet his death from attempting to leave the train while in motion.

2. That, under the application, the insured was entitled to have a policy issued to him which did not contain these restrictions.

3. That, under the application, it is fairly to be inferred

that an accident such as caused the death of Dailey was within the express risks against which it was assumed to insure.

4. That the restriction in the policy cuts out the probable accidental violence which, in the minds of both parties, Mr. Dailey, a railway passenger conductor, was insuring himself against; that the restriction would practically render the insurance nugatory and valueless; and that it must therefore be held inoperative so far as this insurance is concerned.

There can be no doubt about the correctness of plaintiff's position when we take into account the answers given to the questions in the application, and, had the action been brought upon the contract made by the acceptance of the application, no doubt could arise as to the plaintiff's right of recovery; but the declaration avers that the deceased did not come to his death by the attempt to leave the moving train. Failing to establish that fact, and it being shown by defendant that the proximate cause of the injury and death was the attempt to leave the train while in motion, it is now asserted that that was one of the very risks insured against, and plaintiff should be permitted to recover for that reason.

We think there was no evidence from which the jury would have been warranted in finding that Dailey came to his death by any other means than in an attempt to leave the train while in motion. We are also satisfied from the application and the information which that gave to the defendant company that accidents of this kind are of the risks intended to be insured against. The sole business of the deceased was in running passenger trains, and this was plainly stated in the application. It is common knowledge that conductors of passenger trains on all railroads must, in the very nature of their business, not only enter their trains when in motion, but leave them before they come to a full stop. It is common knowledge that conductors of passenger trains have full charge of their trains. They

give the signal to start, and, after the train starts, they get on board. At stations when the train pulls up, and before it stops, the conductor alights upon the platform. This may be a dangerous practice, but it is among the risks which the passenger conductor assumes when he enters upon such employment; and so general is this knowledge that the defendant company, when it took and approved the application, must have had knowledge of it. In view of this, the above restriction in the policy cannot be insisted upon by the defendant company, and, if the declaration had been based upon the contract actually made, the questions here raised by plaintiff might be of avail. As before stated, the contract was complete · when the application was accepted and credit given by the secretary for the premium. The insurance which the parties agreed upon is substantially set out in the application, and the insured had no reason to believe from it that there was to be any such restriction as to entering or leaving moving trains as contained in this policy. He was entitled to have a policy issued to him in conformity to the application, and if the suit had been planted on the contract of insurance such as the minds of the parties met upon, and the other facts were as found by the jury, there could be no doubt about the right of recovery. If it was the intent of the parties that the policy should issue at once when the application was accepted, and the application was accepted to take effect as of January 19, so as to give the insured the same legal remedy which he would have had had the policy been delivered on that day, and that was the intent of the parties, the law will give effect to such intention. *Davenport v. Insurance Co.*, 17 Iowa, 276; *Perkins v. Insurance Co.*, 4 Cow. 645; *Tayloe v. Insurance Co.*, 9 How. 390.

But as the declaration counts on the policy as the contract between the parties, and negatives the restrictive

clause, and this not being proved, the action cannot, in its present form, be maintained, and the judgment of the court below must be reversed, and a new trial granted, with costs.

The other Justices concurred.

---

Upon application of plaintiff a rehearing was granted, and the case reargued May 2, 1894. Upon October 16, 1894, the following opinion was filed, affirming the judgment of the court below:

PER CURIAM. A rehearing was granted in this case on account of the doubt we entertained, when the motion for the rehearing was made, as to the correctness of the holding that the suit could not be maintained upon the policy of insurance, but should have been brought upon the contract effected by the application and the acceptance of the defendant indorsed thereon. This question was not fully presented upon the former argument, and we are satisfied now that that ruling was erroneous. The policy expressly referred to the application, and made it a part of the contract of insurance. In such cases the two instruments must be construed together, in determining what the real contract is. *Chrisman v. Insurance Co.*, 16 Oreg. 283; *Rogers v. Insurance Co.*, 72 Iowa, 448. When the policy, as delivered, contains provisions not in the application, and which are not accepted by the applicant, they may be treated as waived by the company, and constituting no part of the insurance contract. We held in the former opinion that the provision of the policy prohibiting the decedent from getting on and off a railroad train while in motion was inoperative, and did not affect the validity of the insurance. He had not accepted this provision, nor assented to it.

The former opinion upon this point is therefore over-ruled, and the judgment is now affirmed.