# JOSEPH SCHWINDERMANN v. GREAT EASTERN CASUAL-TY COMPANY, a Corporation.

## (165 N. W. 982.)

**Insurance policy — provision in — hernia — loss by injury from — not recovered by — injury from falling — with hernia as result — provision not applicable.**

1. A provision in a casualty insurance policy to the effect that the insurance does not cover loss from injuries resulting directly or indirectly from hernia is *held* not applicable, where the insured received an injury by falling from which hernia resulted.

**Casualty insurance company — assured — application from — while working at his trade — boiler maker in roundhouse — injury sustained by falling — provisions of policy — waiver of.**

2. Evidence showing that the agent of a casualty insurance company solicited an application from the insured while he was working at his trade as a boilermaker in the roundhouse of a railroad company where he was employed; and that, after preliminary proofs of loss had been supplied, the company wrote denying liability upon untenable grounds and making no reference to the circumstances surrounding the accident,—is *held* sufficient to support a finding that the insurance company waived the benefit of a provision in the policy exempting it from liability to an employee while on duty at the roundhouse and repair shop.

**Casualty insurance policy — provisions in — limiting liability for loss — specified in one section — does not limit insurance under different sections.**

3. A provision in a casualty insurance policy to the effect that no claim shall

NOTE.—The reported decisions are almost unanimous in holding that where the condition which exempts an insurer from liability under a policy of accident insurance is itself the result of an accident occurring while the policy is in force, the company is none the less liable for the full stipulated amount. In all reported cases in which the policy sued upon contained provisions of exemption or limitation with reference to hernia, and the death or loss of time resulted from hernia caused by an accident, the insurer was held liable for the full amount stipulated in the policy, as will be seen by an examination of the question under consideration, in notes in 8 L.R.A.(N.S.) 1014, and L.R.A.1916B, 621, on applicability of provisions in accident policy exempting insurer, or limiting its liability for disability arising from a specified condition, when such condition is itself the result of an accident occurring after the issuance of the policy.

be valid for more than one of the losses specified is *held* not to limit the insurance under different sections of the policy.

Opinion filed December 15, 1917.

Action upon policy of accident insurance.

Appeal from District Court, Stutsman County, *J. A. Coffey,* J.

Affirmed.

*John W. Carr,* for appellant.

Where a casualty insurance company policy provides that it shall not cover loss from injuries, fatal or otherwise, resulting wholly or in part, directly or indirectly, from hernia, the assured sustains injury by falling and this is followed by hernia, the loss is partly due, or indirectly due, to hernia, and no recovery can be had.   Kelsey v. Continental Casualty Co. 131 Iowa, 207, 8 L.R.A.(N.S.) 1014, 108 N. W. 221; Sweeney v. National Relief Assur. Asso. 52 Misc. 144, 101 N. Y. Supp. 797; Bacon v. United States Mut. Acci. Asso. (Stedman v. United States Mut. Acci. Asso.) 123 N. Y. 304, 9 L.R.A. 617, 20 Am. St. Rep. 748, 25 N. E. 399.

While these policies are construed most favorably to the assured, yet the court cannot undertake to make a new contract in disregard of the plain language used by the parties.   Peterson v. Modern Brotherhood, 125 Iowa, 562, 67 L.R.A. 631, 101 N. W. 289; Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 64 L.R.A. 349, 104 Am. St. Rep. 857, 76 S. W. 745, 1 Ann. Cas. 252, 1 C. J. p. 413.

Words used in such insurance policies must be given the meaning they ordinarily bear, and where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import. Wheeler v. Fidelity & C. Co. 129 Ga. 239, 58 S. E. 709.

A defendant may, under the statutes of this state, set forth as many defenses as he may have.   Comp. Laws 1913, §§ 7448, 7449.

*M. C. Freerks,* for respondent.

An insurance company is liable under a policy providing that it shall not cover loss or disability resulting directly or indirectly from a hernia, where it appears that the hernia is itself an effect or result of an accident.   Under such conditions a recovery can be had.   Berry v.

United Commercial Travelers, 172 Iowa, 429, L.R.A.1916B, 617, 154 N. W. 598, Ann. Cas. 1918A, 706.

By rejecting the claim for specific reasons stated in its notice of rejection, the company thereby limited its defense in an action to recover, to the grounds urged in the notice of the rejection of the claim, and it waived all other defenses. 1 C. J. p. 488, note 233; Moore v. National Acci. Soc. 49 Wash. 312, 95 Pac. 268, 38 Wash. 31, 80 Pac. 171; Castner v. Farmers Mut. F. Ins. Co. 50 Mich. 273, 15 N. W. 453; Parmeter v. Bourne, 8 Wash. 45, 35 Pac. 586, 757.

BIRDZELL, J.   This is an action upon a policy of casualty insurance which was, by stipulation, tried before the district court of Stutsman county without a jury, resulting in a judgment in favor of the plaintiff for $501.97, interest from August 21, 1916, at 6 per cent and costs. The defendant appeals from the judgment.   The facts are as follows:

The plaintiff applied to the defendant for certain accident and sickness insurance, and on August 7, 1915, the defendant company issued a policy for which plaintiff paid a premium of $24.   The application was solicited by an agent of the defendant company while the plaintiff was at work at his trade, that of a boiler maker, in the roundhouse of the Northern Pacific Railroad Company in Jamestown, and is as follows:

I hereby apply for a policy to be based upon the following representation of facts.   I understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any one of the following statements, material either to the acceptance of the risk or the hazard assumed by the company, is false, or in the event that any one of the following statements is false and made with intent to deceive.   I agree that this application shall not be binding upon the company until accepted either by the secretary at the home office, or by an agent duly authorized to issue policies.

My full name is Joseph Schwindermann.

My age is twenty-four years, one month, height 5 ft. 9½ inches, weight 174.

My address is No. — Town—Jamestown, State—North Dakota.

The duties of my occupation are (describe fully) Boiler maker.

Beneficiary (full name) Charles Schwindermann. Relationship. Address—St. Paul, Minnesota.

Whom to notify in case of accident—Name—Charles Schwindermann.

Address—St. Paul, Minnesota.

No application for accident, health, or life insurance has been declined or policy canceled except as follows: None.

I have never received or been refused indemnity for any accident or illness except as follows: None.

My habits are temperate, I have no impairment of sight or hearing, and have never been ruptured except as follows: None.

I have not had any medical attendance during the past five years, except as follows: None.

I have never had diabetes, kidney disease, syphilis, or any disorder of the brain, spine, or nervous system, and am in whole and sound and healthy condition, mentally and physically except as follows: In A No. 1 health.

Dated at Jamestown, N. D., this 31st day of July, 1915.

(Signed) Joe Schwindermann.

On November 2, 1915, the plaintiff slipped on a wet cement floor in the roundhouse and was injured. The injury which he claims to have received was a hernia for which he was later operated upon in a hospital at Brainerd, Minnesota. He was discharged from the hospital on November 28th., after which time, according to the testimony of the attending surgeon, there was no further occasion for treatment. But it was necessary that he should refrain from working for a considerable period of time thereafter. Some time after the plaintiff's injury was received, he notified the defendant company, in reply to which notice he received the following letter:

Great Eastern Casualty Company,
56 John Street.
New York, Dec. 10, 1915.

Mr. Joseph Schwindermann,
1110 Seventh Avenue,
Brainerd, Minn.

Dear Sir:

We are in receipt of a preliminary proof in your claim and note that

your disability commenced on November the 2d. You will note by referring to your policy that it requires that written notice of illness must be furnished to the company within ten days from the beginning of the illness disability, and that written notice of the accident must be furnished to the company within twenty days from the date the injuries are received. As you failed to comply with the requirements of your policy, we regret that you have no claim against us.

We further note that your disability was caused by hernia, and we beg to refer you to additional provision B of your policy, wherein you will note that protection is distinctly debarred for hernia.

Yours very truly,<br>C. S. Wilson,<br>Assistant Supt. Claim Dept.

FEW—MK.

The appellant relies for reversal upon the effect of certain provisions in the policy of insurance. The first provision relied upon is subdivision B of the "additional provisions." This subdivision is as follows: "This insurance does not cover disappearance, or suicide or any attempt thereat, sane or insane, or loss from injuries fatal or otherwise, except drowning, of which there shall be no external and visible contusion or wound on the exterior of the body at the place of injury, the body itself in case of death not to be deemed such, or from injuries fatal or otherwise resulting wholly or in part, directly or indirectly, from or whole or in consequence of being affected by intoxicants, narcotics, anesthetics, gas, corrosives, poison, infection, poisonous substances, sunstroke, freezing, vertigo, fits, insanity, somnambulism, hernia, war, riot, strikes, dueling, fighting, wrestling, racing, football or polo playing, unnecessary exposure to obvious danger, handling any explosive, violating law, resisting arrest, being in or on any locomotive, freight or hand car, or while violating law or the rules of a corporation, or the rules of a public carrier affecting the safety of its passengers; or while on the right of way, bridge, trestle, or other property of a railway corporation other than stations, platforms, and regular crossings prescribed by law, not being at the time a passenger, any altercation or quarrel, or intentional injury inflicted by himself or any other persons, sane or insane, or while in or on or attempting to get in or out of any

aerial machine or conveyance, or while participating in any motor, vehicle, speed, or endurance contest."

It is contended that the effect of the foregoing provision is to render the policy entirely inapplicable where the injury resulted wholly or in part, directly or indirectly, from hernia. Such is the language of the provision quoted, and, under the universal rule for the interpretation of clauses in insurance policies limiting liability, the language in question is to receive a strict construction against the insurance company. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 64 L.R.A. 349, 104 Am. St. Rep. 857, 76 S. W. 745, 1 Ann. Cas. 252. The limitation is not to be carried beyond the plain literal meaning of the words employed. The obvious literal meaning of the clause in question is that the insurance does not cover injuries which result from hernia. It is not stated, and consequently cannot be assumed to have been meant, that the insurance was not to cover an injury from which hernia resulted. In other words, under the language of the policy, where hernia is the cause, the insurance is not applicable, but where something else is the cause and hernia the result, the limitation does not apply. See Travelers' Ins. Co. v. Murray, 16 Colo. 296, 25 Am. St. Rep. 267, 26 Pac. 774; Atlanta Acci. Asso. v. Alexander, 104 Ga. 709, 42 L.R.A. 188, 30 S. E. 939, 4 Am. Neg. Rep. 616; Berry v. United Commercial Travelers, 172 Iowa, 429, L.R.A.1916B, 617, 154 N. W. 598, Ann. Cas. 1918A, 706. See also Travelers' Ins. Co. v. Murray, supra.

It is next contended that the court erred in giving the plaintiff judgment, for the reason that the plaintiff was in a prohibited place at the time the injury was received. Subdivision D of the "additional provisions" is relied upon. This subdivision is as follows: "This policy does not cover persons in mines or where explosives are manufactured, or tunnel workers, or railroad, news company, or government mail-service employees while on duty, excepting those whose duties call them solely in the office and away from track, train, yard, roundhouse, and repair shop." We are of the opinion that the defense afforded by the foregoing provision is not open to the defendant. The defendant's own agent solicited the application while the plaintiff was at work at the roundhouse. And in the application the applicant was required to furnish information in response to the following inquiry, "The duties of my occupation are (describe fully)." To this the plaintiff responded,

"Boiler maker." The knowledge acquired by the agent in soliciting the policy is to be attributed to the company. Comp. Laws 1913, § 6350; French v. State Farmers' Mut. Hail Ins. Co. 29 N. D. 426, L.R.A.1915D, 766, 151 N. W. 7. From this it follows that the company not only had knowledge of the plaintiff's occupation, but also knowledge of the circumstances surrounding the pursuit of his occupation. In the light of these facts, it is not reasonable to infer that the plaintiff and defendant were contracting with reference to indemnity for accidents that might befall him in that portion of the day when he was comparatively inactive. When he was required to state in his application the duties of his occupation, he might reasonably have assumed that the information was for the purpose of enabling the insurance company to judge as to whether or not it would issue a policy insuring the risk incident to his occupation, in the ordinary way in which he was known to be pursuing it. See Dailey v. Preferred Masonic Mut. Acci. Asso. 102 Mich. 289, 26 L.R.A. 171, 57 N. W. 184, 60 N. W. 694. It should further be noted that paragraph 12 of the "standard provisions" of the policy in question provided that "if the insured shall at any time change his occupation to one classified by the company as less hazardous than that stated in the policy, the company, upon written request of the insured and surrender of the policy, will cancel the same and will return to the insured the unearned premium." The only reasonable inference to be drawn from this provision is that the policy is intended to insure the applicant while in the pursuit of his occupation.

Connecting the foregoing circumstances with the transaction immediately following the loss, there is ample evidence from which waiver might be inferred. It appears that the plaintiff duly submitted to the defendant the preliminary proofs of loss. The reason for requiring the submission of such proofs of loss can be none other than to give the insurer an opportunity to investigate for the purpose of determining whether or not the claim made is one that will be recognized at all. If not recognized, the insurer will ordinarily apprise the defendant of the reason for the denial of the claim; and, if recognized, it will furnish forms for the submission of the final proofs. After receiving the preliminary proofs in this case, the defendant wrote the letter above quoted, wherein it denied liability upon an untenable, technical ground,

and upon a further ground, going to the merits of the insurance contract itself. In this, it was likewise in error as to its obligation as shown above. We are of the opinion that this letter, written under the circumstances shown to have existed in this case, connected with the circumstances surrounding the inception of the policy, is sufficient evidence to support a finding that the insurer waived the benefit of subdivision D of the policy. In fact, the entire conduct of the insurance company, from the issuance of the policy to the writing of the letter assigning reasons for denying liability, is consistent only with the theory that the company considered the policy as binding upon it while the plaintiff was performing the duties incumbent upon him in his vocation. Gans v. St. Paul F. & M. Ins. Co. 43 Wis. 108, 28 Am. Rep. 535.

It is further argued that the trial court erred in permitting recovery under two provisions of the policy, to wit: Under section D, which covers loss of time after thirty days' confinement within the house after any accident, for which the insurance is $150 per month ("if not covered under any preceding section"), and section F, which provides the hospital benefit of $25 per week ("if not covered under any preceding section"). It is claimed that subdivision A of the "additional provisions" limits recovery to the loss under one of these sections. Subdivision A provides: "No claim shall be valid for more than one of the losses herein specified, except that claims under section J shall be payable in addition to any other indemnity due, and under section E as provided thereunder. Any payment under section A or C shall terminate this policy." This position is wholly untenable. The force of the argument depends upon the meaning of the terms "claim" and "losses" in the foregoing subdivisions. It may be that under this provision separate claims must be made for each loss, but it is not stated that the *insurance* shall only extend to one of the losses.

But even assuming that the paragraph in question is susceptible of the interpretation that the insurance shall only extend to one of the losses, a strict interpretation of the provision in question requires that a claim under one section should be invalidated only to the extent that there is an overlapping. But as to this we express no opinion. The right to compensation for the loss of time under section D only arises after the expiration of thirty days from the accident, and the maximum

claim thereunder is $900, or at the rate of $150 per month for six months. On the other hand, the right to the hospital benefit under section F arises at once and is limited to twelve weeks. In the case at bar the right to the hospital benefit had been exhausted before the right to the time insurance under section D accrued. If the claiming or the acceptance of the hospital benefit be construed as depriving the insured of the benefit of his insurance against loss of time, he would be compelled to choose between two provisions of his policy without knowing at the time of his choice the relative value to him of the provisions under which his claims may be made.

It is further argued that the judgment is erroneous because no final proof of loss was ever submitted, but it is elementary that where an insurance company denies liability absolutely, it waives compliance with those provisions of the policy which are merely conditions precedent to the bringing of an action.

Finding no error in the record, the judgment is affirmed.

Robinson, J. (concurring). In this case plaintiff recovered a judgment against defendant for $546.67 on an accident insurance policy for which he paid $24. It is made on a written application which does not give the terms or conditions of the policy. It is a document 20x24 inches, printed on two sides. The chances are more than ten to one plaintiff never read it, and that if he did read it he knew not what it meant. It consists of a general covenant to give a limited indemnity for loss by accident, with numerous exceptions and limitations apparently designed to deceive and evade nearly all liability. It is entirely safe to say that such exceptions and evasions were not included in the insurance application, and they formed no part of the contract. The courts have gone altogether too for in holding that a corporation may receive good money for a good and valid insurance contract, and impose on the purchaser a large printed document which makes the insurance a deception. It is no answer to say that, when a party receives such a document he may pay an attorney $5 to read it and pay him $10 to return it and to recover the insurance premium.

As it appears, when the plaintiff signed his insurance application and paid his $24 he was employed as a boiler maker or repairer in the shops of the Northern Pacific Railway Company at Jamestown, and it

was so stated on his application, and the fact was well known to the agent receiving the money. But when rupture or hernia was the result of a severe fall on the floor of the railway shops, and the plaintiff made a proper claim for damages, the company says to him: We did not insure you against accident causing hernia. We do not insure railway company employees on duty in a roundhouse or repair shop. We regret that you have no claim against us. And truly, if such were the fact, it would be sincere cause for regret.

The company wholly rejects the claim, and demurs to the proof because it does not conform to its rules, and it demurs to the suit because it was brought too soon. It insists on the right to make a special code of procedure to govern claims and suits against it, and still its officers regret that the plaintiff has no just claim against them, but assuredly the record shows no such cause for regret. There has been a fair trial, and the findings are well sustained by the evidence.