LILLIAN B. HUNGERFORD, Appellee, v. MUTUAL LIFE INSURANCE COMPANY, Appellant.

**INSURANCE: Prohibited Occupation—Waiver.** An insurer who, on
1  a truthful application, issues a policy, with knowledge, express or implied, that the insured is then engaged in, and expects to continue in, a prohibited occupation, must be held to have agreed that the insured might, wheresoever employed, perform any service properly required of him in said occupation, and to have waived all policy provisions exempting the insurer from liability in case of death while engaged in such occupation.

**INSURANCE: Burden of Proof.** An insurer who affirmatively pleads,
2  in defense of an action on a life policy, that the insured was, at the time of death, engaged in a prohibited occupation, has the burden to so prove. Especially must the insurer assume the burden to show that what the insured did was not within the scope of his employment.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

JANUARY 20, 1921.

ACTION at law, to recover upon a policy of life insurance issued by the defendant upon the life of Willard L. Hungerford. There was a trial to a jury, and verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Jepson & Struble,* for appellant.

*C. R. Jones* and *A. C. Hatt,* for appellee.

WEAVER, J.—On March 23, 1917, Willard L. Hungerford, residing in the town of Slayton, Minnesota, was and for some

time had been employed as engineer of an electric light plant at

1. INSURANCE:
prohibited occu-
pation: waiver.

that place.  On the date named, said Hunger-
ford signed an application for life insurance
in the defendant company.  The application was
received and approved by the defendant, and a policy issued
thereon for the sum of $1,000, payable to the plaintiff, Lillian
B. Hungerford.  The insured man died on November 24, 1917,
and due notice and proofs thereof were delivered to the defend-
ant, which refused payment.  To the plaintiff's action to enforce
collection of the insurance, the defendant answered, admitting
the issuance of the policy, but denying liability on the following
grounds:

The application made to the company, as above mentioned,
contains a clause or provision as follows:

"It is understood and agreed that, during the period of
one year following the date of issue of the policy of insurance,
for which application is hereby made, (a) the risk of death will
not be covered by the policy if such death occur by my own act,
whether sane or insane, (b) I will not engage in any of the
following extra-hazardous occupations or employments: retail-
ing intoxicating liquors, handling electric wires or dynamos,
blasting, mining, submarine labor * * * unless written permission
is expressly granted by the company."

This agreement, defendant alleges the insured violated, in
that, within the year following the date of the policy, he did en-
gage in the extra-hazardous occupation of handling electric
wires, in which he received an electric shock which occasioned
his death, and it further alleges that, because of such violation
of the terms of the insurance contract, the beneficiary is not
entitled to recover the indemnity.

Replying to said answer, and in avoidance of the defense
so pleaded, the plaintiff says that, at the time the application for
insurance was made and delivered to the defendant, deceased
was engaged and employed as engineer of an electric light plant
by the city of Slayton, Minnesota; that the fact of such occupa-
tion was fully stated and made known to the company in the ap-
plication, and such application was approved and the policy of
insurance issued with full knowledge of his said occupation, and
that he did not contemplate any change thereof; by reason of all

of which the defendant waived the restriction, and the same constitutes no defense to this suit.

On the trial, it was stipulated that the application for insurance was taken by one Utley, a soliciting agent of the defendant, and was duly forwarded to the home office of the defendant, which approved the same, and, in reliance thereon, issued the policy now in suit; that thereafter, in June of the same year, Willard L. Hungerford removed from Slayton, Minnesota, to the town of Parker, South Dakota, where he took employment as engineer in another electric light plant, and continued therein until his death; that, in his employment as engineer, he was required to test the lines of the system, make repairs thereon, and mend or repair breaks therein; and that he removed from his said employment at Slayton and took up employment at Parker without permission of the defendant. For the purposes of the trial, plaintiff admits that the proper officers of the company would, if present, testify that the company, up to the time of Hungerford's death, "did not know that he was engaged in said occupation at Parker, South Dakota."

It is further admitted that the insured, "while within the scope of his employment and working upon live electric wires belonging to his employer, repairing defects thereon, received an electric shock, causing his instant death." The application signed by the deceased was introduced in evidence. It appears to have been made upon a printed blank form, provided by the company or its agent, and, so far as material in this case, reads as follows:

"1.  My name (in full) Willard L. Hungerford.

"2.  (a) My residence and period of residence; street, town, city or village—Slayton; county, Murray; state, Minnesota; for a period of two years.

"(b) My place of business is Slayton, Minnesota.

"(c) My post-office address is Slayton, Minnesota.

"(d) My former residences were Ballatin, Minnesota, for a period of 20 years.

"3.  Date of my birth: Day 31; month, August; year, 1892; age at last birthday, 24.

"4.  Place of birth: Town or city, Pendor, state or Prov.,

Nebraska, country, U. S. A.   Citizen or Subject of, citizen.

"5.   My present occupation is:   (Full details, business or trade and name of firm) stationary engineer, electricity light plant.

"(b) I have been so engaged two years.

"(c) My other occupations are:   None.

"6.   My former occupations were:   Traveling salesman.

"(b) Period so engaged, 3 years.

"7.   I do not contemplate any change of occupation, or becoming connected with any military or naval organization or service or going to any foreign or tropical countries, except; (If none so state) None.

"It is understood and agreed that during the period of one year following the date of issue of the policy of insurance for which application is hereby made, (a) the risk of death will not be covered by the policy if such death occur by my own act, whether sane or insane; (b) I will not engage in any of the following extra-hazardous occupations or employments: retailing intoxicating liquors, handling electric wires, or dynamos, blasting, mining, submarine labor, aeronautic ascensions, etc.   I agree that no agent or other person except the president, vice-president, a second vice-president, a secretary or the treasurer of the company has power on behalf of the company, to make, modify or discharge any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the company's rights or requirements, or to bind the company by making any promise respecting any benefits under any policy issued hereunder or by accepting any representation or information not contained in this application."

There was also evidence fairly tending to show that, generally speaking, engineers having charge of comparatively small electric light plants are usually expected to do more or less of the general work of keeping the machinery, wires, and other parts of the system in repair and working order, and that such was, in fact, the nature of the employment and occupation of the de-

ceased, both at Slayton and afterwards at Parker. In addition
to the knowledge imparted to the defendant and its agent by
the application itself, concerning the occupation of Hungerford,
it is shown that the agent soliciting such application had visited
him two or more times at the light plant, where he had visible
evidence of the nature of the occupation of the man he was
trying to insure.

To reverse the judgment for plaintiff, entered on such show-
ing, the appellant has preserved numerous exceptions in the
record, and assigned numerous errors. In argument, however,
these points are not severally discussed, but treated *en masse,* in
a manner making it somewhat difficult to follow. The essential
features of the controversy may, however, be sufficiently treated
under the following heads:

I.    Under the conceded facts, did the company waive the
right to rely on Hungerford's employment as engineer of an
electric light plant as a breach of the contract of insurance? We
regard it as clear beyond doubt that this inquiry must be an-
swered in the affirmative. To say nothing at this point upon
the personal knowledge of the soliciting agent, the application
revealed, in frank and unevasive terms, that the applicant was a
stationary engineer in an electric light plant; that he had been
so engaged for two years, and did not then contemplate any
change of occupation. With that notice embodied in the appli-
cation itself, it was then for the insurer to say whether it would
reject or approve it. Having approved it, and issued its policy
thereon, it waived or lost the right to thereafter repudiate its
contract because of any fact the existence of which was revealed
to it at or before the time the contract was made. It is not very
material whether the defendant's officers in New York did or
did not have a clear conception or understanding of the nature
and extent of the duties of the applicant in the employment
named. There is neither claim nor proof that Hungerford de-
ceived or misled either the agent or company with reference to
these matters. No questions were asked by them, and no mis-
representations or warranty made by him. The defendant com-
pany cannot be heard to deny its knowledge of what the appli-
cation revealed, or to deny that, with knowledge that the appli-
cant had been and then was acting as engineer of an electric light

plant, and was expecting to remain in that occupation, it approved his application, and issued to him its policy of insurance. The very name of his employment was sufficient to indicate to any person of ordinary understanding that his duties had to do with the production, distribution, and application of electric energy. It is a matter of common knowledge that among the appliances made use of for such purpose are dynamos and wires and other kindred devices which require supervision and attention, and it sufficiently appears from the evidence that, in electric light plants in small towns like Slayton and Parker, the engineer in charge is expected to have a part in keeping and maintaining the system in repair, and in condition to do efficient work. In insuring Hungerford as a "stationary engineer in an electric light plant," without any exception, limitation, or reservation as to the details of such employment, it is to be held, as a matter of law, that appellant consented to his performing any and all of the services usually or properly required of him in that employment.

Whether this be called a waiver or estoppel of the right to plead the restriction found in the application is not material; for it is sufficient to say that, taking the contract as a whole, it conclusively appears that defendant elected to insure the deceased with knowledge, both express and implied, of the nature of his employment.

II. Does the fact that Hungerford left the service of the town of Slayton to re-engage in like service in the town of Parker without obtaining the permission or consent of the insurance company operate to bring the restriction into effect, and thereby avoid the policy? We are satisfied that it does not. There is nothing, either in the application or in the policy issued thereon, requiring the insured to remain in Slayton, or making void the insurance if he shall remove to another place. His occupation remained unchanged, and he was not required to obtain the permission or consent of the insurer to keep his insurance in force.

III. It must not be overlooked that the defense relied upon is affirmative in character, and the burden of proof upon the issue so raised is on the appellant. There is an entire failure of such proof. No evidence is offered in support of the defense,

except such as it seeks to draw from the application itself, and a stipulation made by the parties. Aside from identifying the application, the stipulation simply concedes that, if the officers of the company were present, they would testify that the application was duly approved, and the policy issued, relying upon the application and the statements therein made. It was also agreed that, in June, 1917, the insured moved from Slayton, Minnesota, to Parker, South Dakota, where he again entered employment as engineer of an electric light plant, such occupation requiring him to handle live electric wires and dynamos carrying 2,300 volts of electricity, and to test the lines of the system and repair or assist in repairing broken wires, and that it was while performing such work, and within the scope of his employment, that he received an electric shock, causing his death. It is also agreed that said officers would testify, if present, that, up to the time of the death of the insured, defendant did not know that he was engaged in said occupation at Parker. It is admitted, also, that insured did not ask or obtain the defendant's permission or consent to his employment in the light plant at Parker.

2. INSURANCE: burden of proof.

There is nothing in this stipulation having any tendency to sustain the affirmative defense. The employment of insured at Parker was of the same kind and nature as that in which he had been engaged at Slayton. There is nothing in the application or policy binding the insured to remain in Slayton, or to require the permission or consent of the company to his change of employers. The evidence fairly indicates that engineers of light plants in small towns ordinarily assume and attend to a somewhat wider range of duties than those in larger towns, and no witness undertakes to say that the work or employment of the insured in either Slayton or Parker was other than or different from such as is usually and properly performed by such engineers. The owner of the Slayton plant, testifying as a witness, says of Hungerford's work in that position:

"He was occupied in general work of all descriptions, especially in running engines and generators. He had entire charge of the plant at certain periods. The nature of his duties in that employment was firing and managing the engines, of which we had two. He also worked repairing electric street

lights, electric switch boards, and live electric wires nearly every day. He was out frequently fixing street lights, broken line wires, running service wires, and putting up new power and light lines.''

The same witness further shows that, on at least two occasions, while defendant's agent was soliciting deceased to take out this insurance, said agent was present while Hungerford was actively engaged in his duties, and could not have helped seeing the same. No witness undertakes to say that such work was outside of the proper range of the duties of an engineer of a plant of that kind, or (as we have already noted) that the service he performed at Parker was of any different or more hazardous character.

The defendant voluntarily, and with open eyes, elected to insure this man as an engineer of an electric light plant, and the commonest principles of good faith and fair dealing forbid it to forfeit the policy because deceased continued in that employment, according to the purpose declared by him in his application.

IV. The appellant places considerable reliance on that clause in the application which provides ''that no agent or other person, except the president, vice-president, second vice-president, secretary, or treasurer, has any power on behalf of the company to make, modify, or discharge any contract of insurance * * * or accept any representation or information not contained in the application.''

Just what bearing this provision has on the present controversy is not clear. The right of the plaintiff to recover on the policy issued to the deceased is not based, nor does it in any manner depend, on any modification or change or discharge of any agreement by or contract with the company. The right which plaintiff asserts to a recovery is upon the contract as made, unchanged and unmodified. The restriction in the application, in so far as it is now relied upon to defeat the plaintiff's action, never constituted any part of the contract of insurance, and is to be disregarded.

V. Exceptions are taken by appellant to rulings upon evidence and instructions given by the court to the jury. Many of the exceptions are not in a form to enable us to consider

them. For example, an assignment of error ''in overruling objections of appellant found at lines 26 and 27, page 14 of the abstract,'' and others of a similarly vague and general character, requiring the court to go back to the abstract to discover the ground and nature of the objection, has often been held insufficient to call for a ruling thereon by this court. We mention the failure of the abstract in this respect the more readily from the fact that, taking the case as a whole, we are strongly impressed with the conclusion that upon no allowable theory of the case, as shown by admitted facts, could a verdict for the defendant be sustained. So far as the alleged errors are properly assigned, they are governed by the conclusions we have already announced. None of the authorities cited by appellant is inconsistent with the views we have herein expressed. There seem to be few decided cases directly in point, so far as relates to the issue of fact here presented, but the question of law applicable thereto is so clearly covered by familiar principles of the law of insurance contracts as to leave no doubt of the liability of the defendant. ''

Supporting this view, see *Dailey v. Preferred M. M. A. Assn.*, 102 Mich. 289 (57 N. W. 184) ; *Schwindermann v. Great Eastern Cas. Co.*, 38 N. D. 584 (165 N. W. 982) ; *Richards v. Travelers' Ins. Co.*, 18 S. D. 287 (100 N. W. 428) ; *Brown v. Railway Pas. Assur. Co.*, 45 Mo. 221; *Peoria M. & F. Ins. Co. v. Hall*, 12 Mich. 202.

Considerable is said in argument of the meagerness of the plaintiff's showing in these respects. This objection evidences a forgetfulness of the fact that, as we have already noted, the burden is on the defendant to make an affirmative showing that the insurance was forfeited by some violation of the terms of the contract, and that, if it be claimed that the work in which the insured was engaged was not within the scope of his employment as engineer, or was of a character forbidden by the terms of his contract, it was incumbent on the defense to prove it, and not upon plaintiff to negative it.

Further discussion is unnecessary. There is no reversible error in the record, and the judgment appealed from is— *Affirmed*.

EVANS, C. J., PRESTON and DEGRAFF, JJ., concur.