## Etta Goetz, Appellee, v. Continental Casualty Company, Appellant.*

1. EVIDENCE—*construction of accident policy phrase by expert witnesses.* Expert witnesses may be allowed to explain the meaning of a technical phrase used in an accident policy to describe the kind of work in which insured was engaged.

2. INSURANCE—*what work covered by policy on "electrician, inside wiring."* An accident policy on an "electrician, inside wiring" covers the work of one who at the time he was killed by an electric shock was working on wires outside a building but in a circuit belonging to the employer and not to the company furnishing the electricity.

---

* Received from clerk of Appellate Court, August 8, 1927.

3.  INSURANCE—*in whose favor policy construed.* The language of an insurance policy will be construed most strongly against the insurer, and of two reasonable interpretations the one more favorable to the insured will be adopted.

Appeal by defendant from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed April 2, 1925.

TERRY, GUELTIG & POWELL, for appellant.

GEERS & GEERS, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee for $2,095.30, rendered by the circuit court of Madison county, on an accident policy as indemnity for the death of the insured, who was a son of appellee.

The declaration, which consists of one count, contains a copy of the policy sued on, and alleges among other things that while said policy was in force the insured met his death as the result of a personal bodily injury effected solely and independently of all other causes by the happening of an external, violent and purely accidental event. To said declaration appellant filed the general issue and three special pleas. Said special pleas in substance aver that at the time appellee's insured received the injury in question he was doing an act pertaining to an occupation classified by appellant as more hazardous than the occupation of the insured as stated in said policy, and that therefore appellee would be entitled only to the reduced amount of insurance, according to standard provision I of said policy. To said special pleas appellee filed replications in which it was averred in substance that at the time the insured received the injury which resulted in his death, he was doing acts or things pertaining to the occupation of a "traveling inside electrician," which latter occupation was the one stated in the policy of insurance.

A jury was waived and a trial was had before the court on a stipulation of facts, and oral evidence heard on said trial, resulting in a finding and judgment as above set forth.

The stipulation of facts is to the effect that on May 22, 1923, the insured, an electrician employed by the Chicago, R. I. & P. R. Co., and who had followed the occupation of an electrician for several years, had been sent to Inver Grove, Minnesota, for the purpose of making changes in certain wiring at a shop building there located belonging to said railroad company; that in said shop building, electricity was used for operating machinery, the main electric line approaching from a point some distance from the building; that this electric line, before it reached the building, passed through a transformer located on a pole some distance from the building, and from the transformer through certain wires to brackets outside said building. On the day of his death, Lee Goetz had renewed the wiring and changed its location from the transformer to a bracket on the outside of the building and had installed an iron pipe through the wall from the inside to the outside of the building, through which the main wires were run and connected with the wires extending from the transformer to said bracket. At the time he received the injury in question, he was standing on a ladder on the outside of the building several feet away from the building where he had finished connecting together the wires extending from the transformer to the bracket with the wires extending in the iron pipe through the wall of the building. The current was then on and flowing through these wires, and as he was wrapping rubber tape around the exposed end where the connection had been made, he received an electric shock by coming in contact with these wires while a current of high voltage was passing through them, causing him to fall to the ground.

The insured gave his occupation in the application for insurance as a "traveling inside electrician." On the trial of said cause, in addition to said stipulation, three electricians testified on behalf of appellee, over the objections of appellant, to the effect that an inside wireman works at anything on the inside of a transformer. One of said witnesses testified: "To be an inside wireman means anything from the inside of the transformer on in. Inside wiremen have occasion to climb poles, fasten cross-arms, climb ladders, fasten brackets on the outside of buildings, handle high voltage." Another of said witnesses testified: "An inside wireman in the practice we carry on, is one who takes care of the wiring or electrical equipment on the customer's side of the connection or point of delivery for the energy, that would be where it is delivered by the company to a consumer." The other of said witnesses testified: "The duties of an inside wireman take him from everything to the transformer, if he wants to take it that way, just according to where the point of entrance coming in; it takes him from building to building, on top of poles, to brackets on the outside of buildings." This witness further testified, "wiring is customarily done by inside wiremen without turning the current off."

In the classification of risks filed by appellant insurance company in the office of the State superintendent of insurance at Springfield, electricians are classified as follows:

"Electrician.

| Occupation, Exposures & Hazards. | Class. | Limit of Risk. |
|---|---|---|
| Electrician, traveling inspector and repairing, not linemen | Medium | $2,000.00 |
| Electrician, inside wiring | Ordinary | 2,300.00 |
| Electrician, lineman, current on | Non-insurable | |
| Electrician, outside wiring | Hazardous | 500.00 |
| Electrician, transformer work | Extra-Hazardous | 500.00" |

It is the contention of counsel for appellant that at the time the insured received the injury which resulted in his death, he was doing an act or thing which pertained to the occupation of an "electrician, lineman, current on," which occupation appellant company had classified as noninsurable and more hazardous than the occupation of traveling inside electrician, which was classified in the policy as a medium risk. No evidence was offered on the part of appellant with reference to the meaning of the term "traveling inside electrician," as understood by electricians. The only oral testimony offered by appellant was that of the witness Houschild, chief clerk of appellant company, and who was not an electrician. He undertook to testify with reference to the character of work which would be covered by the different classifications made by appellant company. In other words, he undertook to construe the terms of said policy from the standpoint of appellant company, so far as the matter of the different classifications was concerned.

It is the contention of counsel for appellant that it is for appellant company to say what line of work is covered by the different classifications set forth in its policies. On the other hand, counsel for appellee insist that it is competent for the court to receive the testimony of expert witnesses as to the meaning of the term "inside electrician" or "inside wireman," on the theory that such term is a technical one, and which may be explained by experts who are, by education and experience, qualified to testify in reference thereto.

We are of the opinion and hold that the court did not err in receiving the testimony of the expert witnesses offered on behalf of appellee. *City of Elgin v. Joslyn*, 136 Ill. 525; *Clarke v. Shirk*, 170 Ill. 143; *Louisville & N. R. Co. v. Illinois Cent. R. Co.*, 174 Ill. 448; *Garrity v. Catholic Order of Foresters*, 148 Ill. App. 189; 10 R. C. L., p. 1072. This being true, the evidence abundantly supports the proposition that the policy

sued on covered the insured in the work he was doing at the time he received the injury which caused his death.

In *Thorne v. Casualty Co. of America,* 106 Me. 274, the court, in discussing a somewhat similar proposition, says:

"A stipulation in an accident policy that if insured is injured while at work in any occupation classed as more hazardous than that stated in the schedule the liability of the insured shall be only for such proportion of the indemnity as the premium will purchase at the rate fixed by the company for the hazard does not contemplate the inhibition of acts, performance of which is necessarily implied from the vocation named in the policy; and where insured's occupation is stated as member of firm or employed as manager of a beef company, and where his duties are described as 'office duties and traveling only,' the insurer is liable for injuries received by the insured while in the refrigerator of his employer's plant directing the transfer of carcasses from one truck to another and illustrating to the workmen how to do the work."

And in *Dailey v. Preferred Masonic Mut. Acc. Ass'n of America,* 102 Mich. 289, being a suit on an accident policy where the insured was described as a "passenger conductor," it was held that the insured could not resist a recovery upon the ground that the insured was injured while leaving a moving train, although the policy expressly excepted the hazard of "attempting to enter or leave moving conveyances using steam * * * as a motive power." The court in discussing said proposition says:

"We are also satisfied from the application and the information which that gave to the defendant company that accidents of this kind are of the risks intended to be insured against. The sole business of the deceased was in running passenger trains, and this was plainly stated in the application. It is common

knowledge that conductors of passenger trains on all railroads must, in the very nature of their business, not only enter their trains while in motion, but leave them before they come to a full stop. It is common knowledge that conductors of passenger trains have full charge of their trains. They give the signal to start, and, after the train starts, they get on board. At stations when the train pulls up, and before it stops, the conductor alights upon the platform. This may be a dangerous practice, but it is among the risks which the passenger conductor assumes when he enters upon such employment; and so general is this knowledge that the defendant company, when it took and approved the application, must have had knowledge of it.''

It should also be kept in mind that in suits to recover on an insurance policy, where there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted. *Royal Circle v. Achterrath,* 204 Ill. 549; *Switchmen's Union of America v. Colehouse,* 227 Ill. 561; *Monahan v. Fidelity Mut. Life Ins. Co.,* 242 Ill. 488. The reason of the rule is that the language of the contract is selected by the insurer, and therefore if there is any uncertainty or ambiguity in the language used, it should be construed most strongly against the insurer. *Cottingham v. National Mut. Church Ins. Co.,* 290 Ill. 26; *Julius v. Metropolitan Life Ins. Co.,* 299 Ill. 343; *Hancock v. National Council of K. & L. of S.,* 303 Ill. 66.

It is further insisted by counsel for appellant that the court erred in its rulings on the propositions of law submitted on the trial of said cause. The court's rulings were in keeping with our construction of said policy, and the court did not err therein.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*