Florence Morris, Appellee, v. Central West Casualty Company, Appellant.

Gen. No. 35,251.

Scanlan, J., dissenting.

Heard in the second division of this court for the first district at the June term, 1931. Opinion filed February 23, 1932.

Cassels, Potter & Bentley, for appellant; Ralph F. Potter, of counsel.

Kremer, Branand & Hamer, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

On May 25, 1929, plaintiff, widow of Roscoe Morris, commenced an action in assumpsit in the superior court to recover the sum of $3,800 from defendant. The action is based upon a policy of insurance issued by defendant, dated March 23, 1928, and headed ''Universal Standard Workmen's Compensation Policy.'' There was a jury trial during March, 1931, resulting in a verdict and judgment against defendant for $3,499.61, and the present appeal followed.

Plaintiff's declaration consisted of one special count, to which defendant filed a plea of the general issue. After setting out the policy in *haec verba*, the declaration alleges that at the time of the issuance of the policy and thereafter Roscoe Morris was the owner of an

automobile truck ''used and operated by him in and about the delivery of materials for the Central Lime & Cement Co.'' (hereinafter called the Lime Co.); that on December 29, 1928, while Morris was delivering a load of lime in the truck for the Lime Co. to a certain building in Chicago, known as the Drake Tower, and ''while attempting to lower the tail-gate of the truck,'' he was forcibly struck by the tail-gate and suffered severe injuries, as the direct result of which he died at the Alexian Brothers Hospital in Chicago on January 18, 1929; that on January 8, 1929, plaintiff caused written notice of the accident and injuries to be given to defendant; that on January 9, 1929, defendant, upon receiving said notice, caused a physician to visit him and also caused his removal to the hospital where he received further medical attention at defendant's request; that immediately following the accident Morris was given first aid and medical attention by a physician, Dr. Weiss, who made a reasonable charge for his services of $50; that during the year preceding the injury Morris' earnings ''amounted to a sum in excess of $2,500''; that from the date of the injury and until Morris died, defendant paid to plaintiff the sum of $14 a week, for two weeks' total disability; that Morris left him surviving only his widow (plaintiff) whom he was under obligation to support and was supporting at the time of his death; that he during his lifetime and she after his death kept and performed all the requirements of the policy; and that there is now due to plaintiff, ''under the provisions of and within the terms of the policy,'' the sum of $3,750, together with the sum of $50, incurred for the services of Dr. Weiss, aggregating $3,800, which said sums defendant, although often requested, has refused to pay to plaintiff, etc.

By the terms of the printed policy (introduced in evidence by plaintiff on the trial) No. 10,012,914, dated

March 23, 1928, and expiring April 4, 1929, defendant insured Roscoe Morris, designated as ''employer,'' as respects ''personal injuries sustained by *employees,* including death at any time resulting therefrom.'' In paragraph ''One (a)'' defendant agrees ''to pay promptly to any person entitled thereto, *under the Workmen's Compensation Law and in the manner therein provided,* the entire amount of any sum due and all instalments thereof as they become due,'' and it is further agreed that all of the provisions of the Workmen's Compensation Law of Illinois ''shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury *or death* covered by this policy, while it shall remain in force.'' In paragraph ''One (b)'' defendant agrees ''to indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed.'' In paragraph ''Six'' it is stated: ''This agreement shall apply to such injuries so sustained by reason of the business operations described in the Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with or in relation to such work places.'' On a printed page, filled in with typewriting and headed ''Declarations,'' it is stated that the name of the employer is ''Roscoe Morris''; that the ''policy period'' is ''from April 4, 1928 to April 4, 1929''; that the location of the work places of the employer is ''4041 Patterson avenue, Chicago, and elsewhere in the State of Illinois''; that the ''Classification of Operations'' (Item 3. 1a) is ''Delivering for the Central Lime & Cement Co.''; that the ''estimated total annual remuneration'' is ''$2,500'';

that the "rate per $100 of remuneration" is "$1.50"; and that the "estimated premium" is "$37.50." And there is another stated rate "per $100 for Drivers and Drivers' Helpers, if any." Among the "Conditions" of the policy are the following:

"D. The obligations of Paragraph One (a) foregoing are hereby declared to be direct obligations and promises of the Company to any injured employee covered hereby, or, in the event of his death, *to his dependents;* and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the Company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the Company alone or jointly with this employer. If the law of any state in which the policy is applicable provides for the enforcement of the rights of such employees or such dependents *by any Commission, Board, or other state agency,* for the benefit of such employees or such dependents, *then the provisions of such law are made a part hereof,* as respects any matter subject thereto, as fully as if written herein. . . .

"G. No action shall lie against the Company to recover upon any claim or for any loss under Paragraph One (b) foregoing unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against this Employer after trial of the issue or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years thereafter.

"L. No condition or provision of this Policy shall be waived or altered except by indorsement attached hereto signed by the President, Vice-President or

Secretary; nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract. . . ."

Attached to and made a part of the policy is a printed form of an indorsement, signed by the company's president and countersigned by its resident agents. It is therein stated, *inter alia*, that "this employer upon the acceptance of this Policy agrees that at the effective date hereof *he is in full compliance with the above cited Workmen's Compensation Law*, and will not during the policy period exercise any privilege which exists under such law to reject the obligations thereof"; and that "any termination of this Policy shall not be effective as to the employees covered thereby until 10 days after notice of such termination by cancellation or otherwise has been received *by the Industrial Commission of Illinois* at its office in Chicago." Also attached to the policy is *another* indorsement or rider, similarly signed and countersigned and dated April 4, 1928 (the first three clauses being in typewriting and the last in printed type) as follows:

"It is understood and agreed that the policy to which this indorsement is attached is hereby specifically *extended* to apply to injuries and/or death suffered by the *Employer* named in said policy (Morris) *in the same manner and under the same conditions* as it would apply to injuries and/or death suffered by an employee.

"In consideration of the above extension of coverage, it is further agreed that if the Employer takes the place of an employee an arbitrary amount of $2,500 shall be included in the payroll upon which final premium adjustment is made as the entire annual remuneration of the said Employer in lieu of his actual earnings.

"Classification 1 (a) of Item 3 of the policy to which this indorsement is attached shows that the work

undertaken by the Employer named in said policy is delivering for the Central Lime and Cement Co. It is understood and agreed, however, that the said policy shall also apply while work is occasionally being done for other concerns.

"Nothing herein contained *shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the policy other than as above stated.*"

On the trial it was disclosed that on April 1, 1928, the company issued another Workmen's Compensation Policy (No. 10,016,633) to the Central Lime & Cement Co., as *Employer,* on a like printed form. From a portion of this policy (introduced in evidence) it appears in the "Declarations" that the "policy period" is from "April 1, 1928 to April 1, 1929," that the "classifications of operations" (Item 3. 1 (a)) is "delivering for the Central Lime & Cement Co." and that the "estimated premium" is "$200." And attached to said Lime Co.'s policy is the following duly executed indorsement:

"In consideration of the premium determined as hereinafter provided for, it is understood and agreed by and between the named employer (the Lime Co.) and the company that this policy shall apply to *all drivers of hired automobiles* and/or trailers and/or teams used for the purpose stated in the declarations of the said policy.

"It is further understood and agreed that the said policy is hereby *specifically extended* to apply to injuries and/or death suffered by a *hired truckowner* in the same manner and *under the same conditions* as it would apply to injuries and/or death suffered by an *employee.*

"It is also understood and agreed that the premium charge for this policy shall be determined by applying a rate of $.50 for each $100 of the amount paid by the Central Lime & Cement Co. for the hire of automobiles

and/or trailers and/or teams, the amount so paid shall be verified by the records of the Central Lime & Cement Co., the hirer, and the coverage under this policy shall apply while the hired drivers are engaged in the business of hauling for the Central Lime & Cement Co.

"It is further understood and agreed that *this policy of contract hire shall in no way affect the present existing policies of contractors now engaged in hauling for the named employer,* or which may be hereafter written on a specific coverage basis, and insured under individual policies with this company.

"Nothing herein contained shall be held to vary, alter or extend any of the terms, conditions, agreements or limitations of the policy other than as above stated."

The Illinois Workmen's Compensation Act of 1913, as amended, was in force in this State when the policy sued upon was issued on March 23, 1928. (See Cahill's St. 1927, ch. 48, ¶¶ 201 to 236.) In the title it is recited that the purpose of the Act is to provide "compensation for accidental injuries or death suffered in the course of employment." In the second paragraph of section 5 of the Act, the term "employee," as used in the Act, is construed to mean: "Every person in the service of another under any contract of hire, express or implied, oral or written. . . ." In section 6 it is provided that

"No common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee, *other than the compensation herein provided* shall be available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." Cahill's St. 1927, ch. 48, ¶ 206.

In section 7 it is provided in part:

"The amount of compensation which shall be paid for an injury to the employee resulting in death shall be:

"(a) If the employee leaves any widow, child or children whom he was under legal obligations to support at the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than $1,650, and not more in any event than $3,750. . . .

"(f) *All compensation,* except for burial expenses . . . , *shall be paid in installments* equal to the percentage of the average earnings as provided for in section 8 of this Act, at the same intervals at which the wages or earnings of the employees were paid; or if this shall not be feasible, then the installments shall be paid weekly: *provided,* such compensation *may* be paid *in a lump sum* upon petition as provided in section 9 of this Act.

"(g) The compensation to be paid for injury which results in death . . . , shall be paid to the persons, who form the basis for determining the amount of compensation to be paid by the employer. . . .

"The payments of compensation by the employer *in accordance with the order or award of the industrial commission* shall discharge such employer from all further obligation as to such compensation." Cahill's St. 1927, ch. 48, ¶ 207.

In sections 9 and 11 it is provided in part:

"9. Any employer or employee or *beneficiary* who shall desire to have such compensation, or any unpaid part thereof, paid in *a lump sum, may petition the Industrial Board,* asking that such compensation be so paid, and if, upon proper notice to the interested parties and a proper showing *made before such board,* it appears to the best interest of the parties that such compensation be so paid, *the board* may order the com-

mutation of the compensation to an equivalent lump sum, which commutation shall be an amount which will equal the total sum of the probable future payments capitalized at their present value upon the basis of interest calculated at 3 per cent per annum, with annual rests; . . ." Cahill's St. 1927, ch. 48, ¶ 209.

"11. The compensation herein provided, together with the provisions of this Act, shall be the *measure* of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in section three (3) of this Act, . . ." Cahill's St. 1927, ch. 48, ¶ 211.

In sections 13 and 14 provision is made for the creation and organization of the Industrial Board, and in section 15 it is provided:

"The Industrial Board shall have jurisdiction over the operation and administration of this Act, and said board shall perform all the duties imposed upon it by this Act, and such further duties as may hereafter be imposed by law and the rules of the board not inconsistent therewith." Cahill's St. 1927, ch. 48, ¶ 215.

In section 16 is prescribed the powers of the board and the procedure before it. Power is given to administer oaths, to subpoena and examine witnesses, and to issue subpoenas *duces tecum* for the production of books and papers, etc. And in section 18 it is provided:

"*All questions arising under this Act,* if not settled by agreement of the parties interested therein, shall, except as otherwise provided, *be determined by the Industrial Board.*" Cahill's St. 1927, ch. 48, ¶ 218.

In section 19 it is provided that "*any* disputed questions *of law or fact* shall be determined as herein provided." Then is set forth a complete system for the determination of all such disputed questions by means of a prescribed arbitration, review by the Industrial Commission of the decision of the arbitrators, further

review by the circuit court, and still further review by the Supreme Court. In subsection "f" in section 19 it is provided in part:

"The decision of the industrial commission acting within its powers . . . , shall, in the absence of fraud, be *conclusive,* unless reviewed as in this paragraph hereinafter provided.

"(1) The Circuit Court of the county where any of the parties defendant may be found shall, by writ of *certiorari* to the industrial commission, have power to *review* all questions of law and fact presented by such record; . . .

"(2) . . . The court may confirm or set aside the decision of the industrial commission. If the decision is set aside and the facts found in the proceedings before the commission are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the industrial commission for further proceedings and may state the questions requiring further hearing, and give such other instructions as may be proper. . . ." Cahill's St. 1927, ch. 48, ¶ 219.

In section 26 it is provided in part that the employer (A.3) may *"insure* to a reasonable amount his liability to pay such compensation in some corporation or organization authorized, licensed or permitted to do such insurance business in this State," and, if he does so, shall file with the commission in proper form evidence of that fact; that, if such insurance is carried, the sworn statement relative thereto (b) "shall be subject to the approval of the commission"; that the commission, if it shall find that the insurer is insolvent, or shall practice a policy of delay or unfairness towards employees in the adjustment, settlement or payment of benefits, (c) may order and direct said insurer to discontinue the writing of Workmen's Compensation insurance in this State; and that (d) the failure or neglect of an employer to comply with the provisions

of paragraph "a" of this section "shall be deemed a misdemeanor punishable by a fine," etc. Cahill's St. 1927, ch. 48, ¶ 226. In section 28 it is provided:

"In the event the employer does not pay the compensation for which he is liable, then an *insurance company,* association or *insurer* which may have insured such employer against such liability shall become *primarily liable* to pay to the employee, his personal representative or *beneficiary* the compensation *required by the provisions of this Act* to be paid by such employer. The insurance carrier may be made a party to the *proceedings* to which the employer is a party and *an award* may be entered jointly against the employer and the insurance carrier." Cahill's St. 1927, ch. 48, ¶ 228.

On the trial, over defendant's particular objection to the *jurisdiction* of the superior court to determine the issues made by the pleadings, and over other objections as to the competency of certain testimony, plaintiff's evidence disclosed in substance that in December, 1928, Morris was employed by the Lime Co. as a truck driver; that he hauled materials for it, using his own truck, and was paid a fixed price for each load hauled; that early in the morning of December 29, 1928, by direction of the Lime Co., he left its premises with a load of lime to be delivered to the Drake Tower building, then in process of construction, in Chicago; that after he had arrived there, about 10 o'clock, a labor foreman (Vldovich) of one of the contractors on the building saw Morris standing behind his loaded truck, "holding his right hand on his leg"; that "the tail-gate of the truck was down"; that Vldovich asked him what the matter was and he replied that "the tail-gate hit him and hurt him *on the leg*"; that he reached home about 4 o'clock in the afternoon, appearing "upset"; that he "went to bed" and his wife (plaintiff) rubbed him with alcohol "where he had been bruised

on the *left chest* and right leg''; that his condition did
not improve and on the evening of December 31, 1928,
his wife called Doctor Weiss, who then found him in
an ''extremely sick condition with a temperature of
over 105'' and treated him; that he told Dr. Weiss,
in response to inquiries, that, ''while loosening the tail-
gate of his truck, it fell and knocked him *in the chest*
and he fell down and it struck him on the leg''; that
he (Weiss) continued daily thereafter to treat him;
that in his opinion Morris ''was suffering from a
streptococcic infection . . . due to trauma or in-
jury''; that plaintiff, having found in the house the
policy sued upon, wrote defendant a letter at Dr.
Weiss' suggestion advising it of Morris' condition,
etc.; that thereafter representatives of defendant
called and at their suggestion Morris, his condition
having become more critical, was removed to the
Alexian Brothers Hospital on January 9, 1929; that
about this time plaintiff signed and delivered a
''preliminary report of accident,'' which had been
filled out by a representative of defendant; that there-
after, under the policy and the Workmen's Compensa-
tion Law, defendant made two payments of $14 each
for weekly indemnity for total disability, which pay-
ments plaintiff accepted; that at the hospital Morris
was treated by Dr. Swift, employed by defendant for
that purpose and also by Dr. Weiss; that Dr. Swift
examined Morris on January 9 and ''found an abscess
on the left chest in the region of the nipple, about 4
or 5 inches in diameter and full of pus''; that ''under
general anesthesia he incised this abscess and put in
drainage''; that, thereafter, ''because the infection
had spread,'' he performed two other operations; and
that Morris died at the hospital on January 18, 1929.
No evidence was introduced by plaintiff showing that
any attempt ever was made to commence proceedings
before the industrial commission or to have an award

made by it. And the only attempt made by plaintiff to show damages sustained by her was by the witness Dan Wilson, who then was, and had been since 1915, the chief clerk of the Illinois Industrial Commission. He testified that he had had 15 years' experience "in computing *lump sum* settlements" in connection with his other general duties, and that he had with him "certain tables," which give information "as to the value of the dollar for a certain number of weeks based upon 3 per cent interest, with annual rests." He then was asked the following questions:

"Q. Assume a death award based on earnings in excess of $2,500, a dependent widow, no children, and the death occurring on January 18, 1929, can you compute for us the amount of an award based upon those conditions?

"Q. Assume that the award under such circumstances would be $3,750, can you compute for us how many weeks' instalments at $14 per week would have been due on May 25, 1929,—the date the present suit was started?"

The court (properly in our opinion) sustained objections to both questions. Thereupon, with the court's permission and in the presence and hearing of the jury, plaintiff's attorney made the following offer, also objected to by defendant's attorney:

"I offer to prove by this witness that, *based upon an award of $3,750,* there would be on May 25, 1929, 18 weeks' compensation due at $14 per week, making a total sum of $252. Further, that the present value as of that date, computed on the basis of interest at 3 per cent per annum, would have been $3,484; that the measure of plaintiff's damages in *this* suit would have been that sum, plus $252, . . . or a total of $3,736.

"Q. What is that figure, Mr. Wilson?

"A. $3,499.61; . . . that takes into consideration the discount: . . .

"Q. What is the discount?

"A. The discount amounts to $236.39."

It will be noticed that the net figure given by Mr. Wilson during the refused *offer* of plaintiff's attorney, $3,499.61, is the exact amount of the verdict, as subsequently returned by the jury, and upon which the court entered the judgment appealed from.

The main contention here urged by defendant's counsel is that the superior court, in proceedings upon a workmen's compensation policy of insurance, has no jurisdiction to determine any question arising under the Illinois Workmen's Compensation Act, and that the judgment appealed from cannot stand. Plaintiff's counsel, on the other hand, contend in substance that plaintiff's action is in assumpsit and predicated upon a policy of accident insurance, and that the fact (viz., that the policy includes by reference the provisions of the Illinois Workmen's Compensation Act) does not make the present action a proceeding under that act. And counsel argue in their brief that "the effect of the indorsement" on the policy sued upon (viz., that the policy be *extended* to injuries and/or death suffered by Morris) "was nothing more or less than to make the policy in question, as far as Morris was concerned, purely an *accident* policy covering him against accidental injuries and/or death arising out of and in the course of his employment." After considering the provisions of the policy sued upon, including said indorsement and the other indorsements, and the provisions of the Workmen's Compensation Act, we cannot agree with plaintiff's counsels' contention or argument. It appears that about the time the indorsements were made on the policy sued upon, another workmen's compensation policy was issued to the Lime Co. for whom Morris worked as a hired truck owner for the hauling of its materials. By the indorsements on the policy sued upon we think it is clear that

it was the intention of both Morris and the defendant that Morris should be considered as an *employee* and, if injured, while delivering materials in his own truck, entitled to recover compensation *under and in accordance with the Workmen's Compensation Act.* And we are of the opinion, considering the evidence and the policy sued upon and the provision of said act, that defendant's counsels' main contention has substantial merit. In *Mehay v. Industrial Commission*, 316 Ill. 97, 103, it is said: "Whether the claimant has sustained accidental injuries and whether a disability of the claimant is the result of an accidental injury arising out of and in the course of his employment are questions of fact to be determined *in the first instance by the Industrial Commission.* . . ." In *Peters Mach. Co. v. Industrial Commission*, 346 Ill. 403, 407, similar language is used, and it is also said: "Where the decision of the Industrial Commission is clearly against the manifest weight of the evidence, or where it is based upon incompetent evidence, the court should set aside *the award.*" In *Kudla v. Industrial Commission*, 336 Ill. 279, 281, it is said: "The writ of *certiorari* authorized by this section (paragraph f of section 19 of the Workmen's Compensation Act) is the only method provided for the review of decisions of the Industrial Commission. . . . The writ of *certiorari*, by which the circuit court is given power to *review the award* of the Industrial Commission in cases under the Workmen's Compensation Act, is wholly statutory, and in the exercise of the special statutory jurisdiction conferred upon circuit courts in such cases, they act not by virtue of their general jurisdiction but as courts of special and limited jurisdiction, and their powers are limited by the provisions of the statute. Their authority to make any order must be found in the terms of the statute." In view of these holdings of our Supreme Court and the provisions of the Workmen's Compensation Act, particularly sections 6, 7, 18, 19, 26

and 28 as above outlined, and holding as we do that the policy sued upon is a workmen's compensation policy, we think it clear that the Industrial Commission alone had jurisdiction in the first instance to pass upon plaintiff's claim as stated in her declaration. Plaintiff's counsel also argue in their brief that "the Industrial Commission had no jurisdiction to construe the contract in question and to determine whether or not the widow of Morris (plaintiff) had or had not anything coming by reason of said contract." We think that counsel misconstrue the act, or fail to realize the intent and force thereof, particularly the sections last above mentioned.

Defendant's counsel also contend (1) that plaintiff did not show by competent evidence that Morris' death was caused by accidental injuries arising out of and in the course of his employment; (2) that the court committed prejudicial error in admitting over objection certain medical testimony; and (3) that there is no basis in the evidence for the amount of the damages awarded by the jury. In view of our holdings and decision on counsels' main contention it is unnecessary for us to discuss these other contentions.

Our conclusion is that the superior court was without jurisdiction to hear or adjudicate upon plaintiff's claim and erred in entering the judgment appealed from. Accordingly the judgment is reversed without remandment of the cause.

*Reversed.*

Kerner, J., concurs.
Scanlan, J., dissents.

Mr. Justice Scanlan dissenting: As I read the record the opinion of the majority of this court does not fully state the position of the defendant. When the plaintiff, in the trial court, offered the policy in evidence, the following occurred: "Mr. Potter (attorney for defendant): I am not objecting to the authen-

ticity of the document or its execution. I object to it as immaterial, irrelevant and incompetent in that by reason of uncertainty it is a void contract and because the Court has no jurisdiction of the remedy and by reason of the uncertainty of amount involved there could be no judgment upon it." In its argument that the superior court was without jurisdiction to pass upon the claim involved in the instant suit, the defendant does not concede that the plaintiff could have obtained relief in a proceeding before the Industrial Commission. On the contrary, it boldly states, "That anything is due to the plaintiff under that law (Workmen's Compensation Law) is disputed." The defendant strenuously contends that even if the plaintiff had treated the policy as a workmen's compensation policy of insurance and had pursued her remedy before the Industrial Commission, nevertheless, she could not have recovered under the policy, for the reason that the deceased was an employer and therefore he could not occupy the position of an employee within the contemplation of the Workmen's Compensation Act. The defendant argues that "any attempt of the parties to the contract to provide for the payment of compensation to the person named in the policy as an employer upon the theory that he was his own employee, not only 'borders on the ridiculous,' but is a palpable attempt to extend the terms and application of the Workmen's Compensation Act, which, in the language of the Supreme Court of Wisconsin, cannot be so 'enlarged, restricted or modified,' " and in the oral argument before us the defendant contended that the policy was void because in contravention of the statute. In support of this contention it cited *Lyle v. H. R. Lyle Cider & Vinegar Co.*, 243 N. Y. 257 (decided July, 1926); *Porter v. Industrial Commission*, 173 Wis. 267 (decided February 8, 1921); and *Porter v. Travelers' Ins. Co.*, 188 Wis. 638 (decided Jan. 12, 1926), which

seem to sustain the contention that an employer cannot be an employee within the contemplation of the Workmen's Compensation Acts of the respective. States. The policy in the instant case was issued March 23, 1928, and the defendant must be presumed to have known the law which it now cites when it issued the policy. It characterizes the policy as a ridiculous attempt of the parties to run counter to the Act. It would be a reasonable conclusion from the defendant's argument that it knowingly issued what it assumed to be a policy void under the Act. The defendant then advances a contention, inconsistent with the former one, that in the present case the plaintiff's right of action, if any she have, "could only be determined in accordance with the provisions of the Workmen's Compensation Law and not by a suit in the first instance in the Superior Court of Cook County," and this contention is strenuously argued. The defendant also contends that the policy is a void one and recovery under the same would therefore be impossible in any forum. The decision of the majority of this court, upholding the contention that the superior court was without jurisdiction to pass upon the claim of the plaintiff, especially in view of the position of the defendant, does not accord with my sense of justice. The plaintiff's action is in assumpsit, and it is not based upon the theory that the defendant was bound under the Workmen's Compensation Act. It is a suit to recover the amount the plaintiff claims to be due her under an alleged policy of insurance.

In *Healey v. Mutual Acc. Ass'n of the Northwest,* 133 Ill. 556, 561, the court quotes with approval the following: " 'No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to

the indemnity which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted.' May on Insurance (2d ed.) sec. 175.'' (See also *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642, 646.) In *Julius v. Metropolitan Life Ins. Co.,* 299 Ill. 343, 348, it is said: ''If there is any ambiguity in an insurance policy it is the fault of the insurance company. It prepares the contract and the language used in the contract is its language. If that language is susceptible of two interpretations, that one will be adopted which is most favorable to the insured in order to indemnify him for the loss he has sustained.'' (See also *Wilkinson v. Aetna Life Ins. Co.,* 240 Ill. 205; *Clarke & Co. v. Fidelity & Casualty Co. of New York,* 220 Ill. App. 576; *Goetz v. Continental Casualty Co.,* 245 Ill. App. 350, 356.) ''It is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of insured and strictly as against the company. Stated more fully, the rule is that, where, by reason of ambiguity in the language employed in a policy or contract of insurance, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to insured and the other favorable to the company, the former will be adopted. Similar statements of this rule have been repeatedly reiterated in numerous decisions of the courts.'' (32 C. J. 1152.) In support of this statement of the law the editor cites a great many cases from the various states. Numerous Illinois cases are cited. ''Contracts of insurance should be liberally construed to accomplish the purpose for which they are made.'' (Ib.) ''Insurance or indemnity against loss, being the object and purpose of the contract, the courts will construe it, when possible, so as to effectuate this purpose and so as to uphold rather than defeat or avoid, the contract.'' (Id. 1150;

*Weisguth v. Supreme Tribe of Ben Hur,* 194 Ill. App. 17, affirmed in 272 Ill. 541.) "No one can doubt that the language employed in an insurance policy is to be construed in aid of the insurance rather than to the end of defeating it, for, indeed, the insurance vouchsafed is the very object and purpose of the contract." (*De Mun Estate Corp. v. Frankfort General Ins. Co.,* 196 Mo. App. 1, 7.) If the policy in question is interpreted as a workmen's compensation policy, it follows, of course, that it must be held to be a void policy, for the reason that an employer cannot be an employee within the contemplation of the Act. Therefore, in construing the policy, we must interpret it, if possible, in a way that will give effect to it "so as to uphold rather than defeat or avoid, the contract." Here, we have an insurance company boldly asserting that it attempted, in a "ridiculous way," to contravene the Act. The policy was prepared by it, and it cannot be presumed that the deceased, a teamster, was engaged in any such alleged attempt. He sought insurance. The defendant claims that it did not give him insurance of any kind by the policy. Under all the circumstances in this case the defendant should not be allowed to make this claim. If it is a valid policy, and I think it is, as it is not a policy under the Workmen's Compensation Act, it necessarily follows that it is a contract of insurance.

In any event, the judgment of this court that the superior court was without jurisdiction to adjudicate the claim of the plaintiff is an erroneous one. The position of the defendant is that the policy is not a valid workmen's compensation policy and that if a proceeding were brought under it before the Industrial Commission it would fail. The plaintiff admits that the defendant was not bound to make compensation payments to her under the Compensation Act, and she is not attempting, in the present proceeding, to have the superior court pass upon a claim brought under

the Act. Her action is in assumpsit and, as I have heretofore stated, it is not based upon the theory that the defendant was bound under the Workmen's Compensation Act, but it is a suit to recover the amount the plaintiff claims to be due her under an alleged policy of insurance. In my opinion the superior court had full jurisdiction to pass upon the subject matter of the action. Nor would the claim of the defendant that the alleged contract was nonenforceable by its terms affect, in any way, the jurisdiction of the court.

I dissent from the judgment of this court holding that the superior court of Cook county was without jurisdiction to hear or adjudicate upon the plaintiff's claim.